## RAGLAND v. MILAM, Adm'r.

1. When parties stand on a note in the relation of princidal and surety, the mere fact that both signed the note for the accommodation of a third person, whose name also appears as a surety, will not repel the presumption created by the form of the paper; nor does it vary the case that the

Ragland v. Milam, Adm'r.

nominal principal, at the request of the surety, procured a written acknow-
legment from the other surety that he was the party bound to pay the note.

Writ of Error to the Orphans' Court of Talladega.

RAGLAND was appointed by the court, in the first instance,
as administrator of J. W. Milam, deceased, but afterwards re-
signed, whereupon J. J. Milam was appointed administrator
*de bonis non.* In the settlement of Ragland's administration
he claimed to retain a sum of money paid under these circum-
stances, to wit: Some six or seven years previous to the
settlement, one William King, (since dead,) came to Rag-
land and desired him to go surety on a note to be made pay-
able to the Branch Bank at Huntsville. At the time of this
request King had no note with him—Ragland, King, and the
deceased Milam resided in the same neighborhood—Ragland
told King he was unwilling to go his surety—King asked
him if he was afraid to go surety for the deceased Milam—
Ragland said he was not afraid—Ragland then understood
the object of the note was to raise money for King's accom-
modation—Milam was not present, and King left Ragland,
but in a short time returned with a note payable to said bank
signed by Milam, as principal, and by King as surety—Rag-
land then signed the note as surety—Ragland understood
King obtained the money on the note and used it, as well as
that the note was made for his accommodation, but he refus-
ed, as above stated, to be surety for him—Milam was not
present when Ragland signed the note—not long after the
note was made, and after King obtained the money thereon,
Milam, at the instance of Ragland, took an instrument from
King, showing that the note was made for King's accommo-
dation, and was really the party bound to pay it.
This note was sued on by the bank, and the judgment ob-
tained thereon was paid by Ragland. Under this state of
proof, the court considered Ragland and Milam as joint sure-
ties for King, and refused to allow but one half of the sum
paid, as a charge against the estate of Milam.

The decision on this item is the only matter insisted on in
this court as error.

W. P. Chilton, for the plaintiff in error, argued—

1. That the administrator of Milam was estopped by the note, from asserting his intestate was a surety. [Lowry v. Stewart, 8 Ala. Rep. 163; Spence v. Bailey, 8 Ib. 581.]

2. But if parol evidence is admissible to show the relation of the parties different from that shown in the note, then it is clear that Ragland was the surety of Milam, whatever Milam's relation was to King. [Martin v. Baldwin, 7 Ala. Rep. 923; Miller v. Stewart, 4 Wash. C. C. R. 26; Harris v. Warren, 13 Wend. 400; Blake v. Cole, 22 Pick. 31.]

F. W. Bowdon and S. F. Rice, contra, argued—

1. The conclusion, from the facts stated, is that Milam and Ragland as between themselves, were joint sureties for King. [Pollard v. Stanton, 5 Ala. Rep. 451; Grafton Bank v. Kent, 4 N. H. 221; 3 Wend. 399; Douglass v. Waddle, 1 Ohio, 191; Beaman v. Blanchard, 4 Wend. 432.]

2. But if this is not the conclusion from the facts occurring at the time, the circumstance that Ragland acted on such assumption, by causing Milam to procure the declaration from King, that the latter was principal, is evincive of his consent that both should be considered sureties. [Sherrod v. Rhodes, 5 Ala. Rep. 683; Pickering v. Marsh, 7 N. H. 192; 10 Vesey, 160.]

GOLDTHWAITE, J.—The previous decisions of this court have established the principle, that parties to notes, &c. as between themselves, are permitted to show that different relations exist than is disclosed by the paper itself. [Sherrod v. Rhodes, 5 Ala. Rep. 683; Pollard v. Stanton, Ib. 451.] And the only question here is, whether the facts disclosed constitute the relation of joint sureties, between Milam and Ragland. From the face of the paper, it is evident the *prima facie* intendment is, that the former was the principal in the note, but it is equally so from the extrinsic facts, that it was made solely for the accommodation of King. The disclosure that it was thus made, does not induce the conclusion that the other parties signing the note, intended to become bound between *themselves*, as joint sureties, as the presumption arising out of the circumstance of the paper being solely

for the accommodation of King, is no stronger than when the same fact is disclosed in relation to bills or notes, indorsed by several persons, and with respect to which we have held the liability to be as indicated by the security itself, until the agreement of the parties to be otherwise liable, as between themselves is made to appear. [Sherrod v. Rhodes, 5 Ala. Rep. 683, and cases there cited.] We must then examine the evidence to ascertain if there is any thing disclosed from which such an agreement can be inferred. The only circumstance relied on is, that Ragland, after the note was made, induced Milam to procure from King a written declaration that the latter was bound as principal. The writing itself is not produced, nor have we the means before us of knowing what admissions of a joint liability were then made by Ragland, if indeed there were any. This circumstance, standing alone, is not sufficient, in our judgment, to outweigh the intendments which must be drawn from the face of the note, and the declaration of Ragland to King, that he would not stand as his surety, but would do so for Milam. The cases of Warner v. Price, 3 Wend. 390, and Pickering v. Marsh, 7 N. H. 192, chiefly relied on by the counsel for the defendant in error, do not seem to us to warrant the conclusion, either that Ragland intended to be bound as a joint surety with Milam, or that this relation is to be inferred from his subsequent conduct. In the first of these citations, the contract was obviously one of joint suretyship, and in the other the attempt was to charge an individual as principal, when the evidence made it entirely clear, the plaintiff entered in the transaction as surety for other parties merely, and had so admitted by sueing them, and using the evidence of the one standing as the nominal principal upon the face of the paper.

Upon the case as shown, we think it clear that Milam was chargeable to Ragland, as the principal debtor, and consequently the latter had the right to retain the whole sum paid on the judgment, out of the assets of the estate of Milam in his hands as administrator. It is scarcely necessary to add, that the court erred in allowing him only one half of that sum.

Reversed and remanded.